UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPER 8 WORLDWIDE, INC., formerly known as SUPER 8 MOTELS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>3082649 NOVA SCOTIA, LTD., DARTMOUTH MARANOVA HOTEL PARTNERSHIP, and PACRIM DARTMOUTH LIMITED PARTNERSHIP,<br><br>Defendants. | No. 14-cv-6275 (KM)(JBC)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the unopposed motion of plaintiff Super 8 Worldwide, Inc. ("Super 8"), for default judgment against defendants 3082649 Nova Scotia, Ltd. ("NSL"), Dartmouth Maranova Hotel Partnership ("Dartmouth"), and Pacrim Dartmouth Limited Partnership ("Pacrim"). (ECF No. 11)

For the reasons set forth below, I will enter a default judgment against defendants NSL and Dartmouth, but not against Pacrim, as to which proof of service is not adequate. Super 8 is awarded $551,938.77, comprising (i) $240,277.73 in outstanding fees and interest and (ii) $305,431.89 in liquidated damages and interest; $5,769.00 in attorney's fees; and attorney's costs of $460.15. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

## I. BACKGROUND

### A. The Parties

Super 8 is a South Dakota corporation with its principal place of business in New Jersey. (Compl. ¶ 1 (ECF No. 1)) the defendants are NSL, a corporation organized and principally conducting business in Nova Scotia, Canada, and Dartmouth and Pacrim, partnerships also located in Nova Scotia. (Compl. ¶¶ 2–4)

### B. Jurisdiction

The complaint alleges diversity jurisdiction. (Compl. ¶ 5) It also alleges that this Court has personal jurisdiction over NSL because of a clause assenting to jurisdiction in New Jersey in section 17 the franchise agreement between Super 8 and Pacrim, which Pacrim assigned to NSL. (Compl. ¶ 6) The complaint asserts jurisdiction over Pacrim and Dartmouth through a guaranty document, which binds them to section 17 of the franchise agreement. (Compl. ¶ 7)

### C. Relevant Facts

On April 24, 2007, Super 8 entered into a franchise agreement with Pacrim to operate a hotel. (Compl. ¶ 9; see Ex. A) On July 30, 2008, Super 8 entered into an assignment agreement with Pacrim and NSL, in which NSL assumed Pacrim's rights and responsibilities as to the franchise agreement. (Compl. ¶ 10; see Ex. B) The franchise agreement provided that NSL was required to operate a Super 8 franchise for 20 years and make periodic payments to Super 8 for royalties, system assessments, taxes, interest, and other fees ("Recurring Fees"); NSL pay 18% interest on past due payments; NSL pay liquidated damages upon termination of the agreement; and the non-prevailing party pay costs and attorney's fees related to enforcing the franchise agreement. (Compl. ¶¶ 11–13, 17–18) It also provided that Super 8 could terminate the franchise agreement with notice to NSL if NSL discontinued operating as a Super 8 or lost possession of the hotel premises. (Compl. ¶ 16)

2

Dartmouth and Pacrim guaranteed NSL's obligations to Super 8 as part of the assignment, including attorney's fees. (Compl. ¶¶ 19–21)

On April 4, 2013, NSL terminated the franchise agreement when it lost possession of the hotel premises. (Compl. ¶ 22) In a letter dated May 24, 2013, Super 8 acknowledged that termination and advised NSL that it was required to pay liquidated damages of $213,733.89, as well as all outstanding Recurring Fees. (Compl. ¶ 23; see Ex. D)

### D. Claims

1. Super 8 requests enforcement of provisions of the franchise agreement that allow it to audit NSL's financial information in order to confirm the amount that NSL owes Super 8. (Compl. ¶¶ 25–27)
2. Super 8 requests enforcement of provisions of the franchise agreement that require NSL to pay Super 8 liquidated damages in the amount of $213,733.89. (Compl. ¶¶ 28–33)
3. In alternative to claim 2, Super 8 requests damages for premature termination of the franchise agreement. (Compl. ¶¶ 34–37)
4. Super 8 alleges breach of contract due to NSL's failure to pay Recurring Fees in the amount of $217,395.88. (Compl. ¶¶ 38–41)
5. Super 8 alleges unjust enrichment due to NSL's failure to pay Recurring Fees in the amount of $217,395.88. (Compl. ¶¶ 42–45)
6. Super 8 requests enforcement of Dartmouth and Pacrim's guarantee of NSL's obligations of $213,733.89 for liquidated damages and $217,395.88 in Recurring Fees. (Compl. ¶¶ 46–49)

### E. Procedural History

Super 8 filed its complaint on October 9, 2014. A summons issued the next day. (ECF No. 2) On March 23, 2015, Super 8 initiated service by international registered mail, and Super 8 filed an affidavit of service on April 15, 2015. (ECF No. 7) On August 4, 2015, Super 8 made a request for default after defendants failed to respond in any manner, and the clerk's office made

an entry of default the next day. (ECF No. 10) On August 14, 2015, Super 8 moved for default judgment against the defendants. Super 8 seeks Recurring Fees of $240,277.73 inclusive of interest calculated at a rate of 1.5% per month, $213,733.89 in liquidated damages, $91,698.00 in interest on the liquidated damages, calculated at 18% per year; attorney's fees of $5,769.00; and attorney's costs of $460.15. (Fenimore Aff. ¶¶ 18, 24–26 (ECF No. 11-3)) In total Super 8 seeks $551,938.77. (Fenimore Aff. ¶ 27) The motion remains unopposed.

## II. ANALYSIS

### A. Standard of Review

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default

4

judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### B. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

NSL, Pacrim, and Dartmouth are located in Canada. Service of a corporation in a foreign country, such as NSL, or a partnership in a foreign country, such as Pacrim or Dartmouth, may be made by any of the means specified in Rule 4(f) for service of individuals, with the exception of personal delivery. Fed. R. Civ. P. 4(h)(2). One acceptable Rule 4(f) means of service in a foreign country is "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Both the United States and Canada are contracting members of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 3161 ("Hague Service Convention"). *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited March 21, 2016).

In a supplemental letter requested by the Court (ECF No. 12), Super 8 stated that it had served defendants by international certified mail, citing Article 10(a) of the Hague Service Convention. In relevant part, the Hague Service Convention states:

> Provided the State of destination does not object, the present Convention shall not interfere with –
> *a)* the freedom to send judicial documents, by postal channels,

5

> directly to persons abroad,
>
> *b)* the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> *c)* the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Service Convention Article 10. Both the United States and Canada have not stated any opposition, declarations or reservations as to Article 10. *See* https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf (last visited March 21, 2016). In particular, Canada has not objected to service by postal channels. *See Moody Nat. FFI Meadowlands MT, LLC. v. Gager*, No. CIV. 12-2124 JLL, 2013 WL 622128, at *6 (D.N.J. Jan. 24, 2013) (Hammer, U.S.M.J.), *report and recommendation adopted*, 2013 WL 623509 (D.N.J. Feb. 19, 2013) (citing *EOI Corp. v. Medical Mktg.*, 172 F.R.D. 133, 138 (D.N.J. 1997)).

There is a circuit split as to whether Article 10(a)'s "freedom" to send documents by postal channels authorizes service by that method. The Third Circuit has yet to weigh in on this issue. The Second and Ninth Circuits have concluded that service by mail is permissible under Article 10(a), while the Fifth and Eighth Circuits have limited Article 10(a) to post-service judicial documents. *See generally Graphic Styles/Styles Int'l LLC v. Men's Wear Creations*, 99 F. Supp. 3d 519, 521–23 (E.D. Pa. 2015) (summarizing the reasoning behind the circuit split); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 470–74 (D.N.J. 1998) (surveying law prior to the Ninth and Fifth Circuit decisions). The majority of courts in this District have agreed with the Second and Ninth Circuits and accepted postal channels as a permitted means of service under the Hague Service Convention, and therefore under Rule 4(f)(1). *See, e.g., Moody Nat.*, 2013 WL 622128 at *4–9; *Rogers v. Kasahara*, No. CIV 06-2033 PGS, 2006 WL 6312904, at *2–5 (D.N.J. Oct. 16, 2006); *Trump Taj Mahal Associates v. Hotel Servs., Inc.*, 183 F.R.D. 173, 176–79 (D.N.J. 1998); *Eli*

6

*Lilly*, 23 F. Supp. 2d at 470–74; *EOI Corp. v. Med. Mktg. Ltd.*, 172 F.R.D. 133, 135–42 (D.N.J. 1997). I will follow that majority view and find acceptable service of process through postal channels under the Hague Service Convention and Rule 4(f)(1).

As to NSL and Dartmouth, then, I find service adequate. Super 8 initiated service by international registered mail on March 25, 2015. (Couch Aff. Of Service ¶¶ 3-7 (ECF No. 7)). The USPS tracking data confirm that the mail was delivered between April 1 and April 6, 2015. (*Id.* and attached Exs. B–E) These facts are confirmed by affidavit of service filed on April 15, 2015. (ECF No. 7)

As to Pacrim, however, uncertainty as to actual delivery prevents me from finding that service has been accomplished. Super 8's affidavit of service states that process was mailed. (Couch Aff. Of Service ¶ 3) The last entry on the attached USPS tracking printout, however, states as follows: "April 1, 2015 6:00 pm   Attempted Delivery – Item being held, addressee being notified." (Couch Aff. Ex. A, ECF no. 7 at 5) The court will not countenance gamesmanship, but here there is no record of Pacrim's having dodged process. I find service insufficient as to Pacrim only.

The prerequisites to a default judgment have therefore been met as to NSL and Dartmouth only.

**C. Three Factor Analysis**

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

7

### 1. Factor 1: Meritorious Defense

The evaluation of the first factor is complicated, of course, by defendants' failure to answer or to oppose this motion. My independent review of the record, however, does not suggest that the claims asserted are legally flawed or that defendants could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Super 8 has successfully stated a claim for breach of both the franchise agreement and the guaranty.

Under New Jersey law,[1] the elements of a breach of contract are that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) the plaintiff sustained damages as a result. *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)); *Peck v. Donovan*, 565 F. App'x 66, 69–70 (3d Cir. 2012) (citing *Murphy v. Implicito*, 920 A.2d 678 (N.J. Super. Ct. App. Div. 2007)).

I am satisfied that Super 8 has set forth a sufficient claim for breach of contract, and I cannot, from the limited materials before me, see any meritorious defense. Super 8 has demonstrated the existence of three valid contracts: the franchise agreement, the assignment, and the guaranty. (*See* Compl. Exs. A–C) Super 8 has alleged that termination of the franchise agreement was proper after NSL lost possession of the hotel premises. (Compl. ¶ 22; *see* Ex. A § 11.2) Super 8 also alleges that it has been damaged by NSL's

---

[1] Section 17.7 of the franchise agreement provides that New Jersey law governs the franchise agreement (Compl. Ex. A § 17.7), and the guarantee specifically adopts section 17 (Compl. Ex. C). Further, section 17.7.3 provides that the parties consent to personal jurisdiction in New Jersey. (Compl. Ex. A § 17.7.3); *see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04, 102 S. Ct. 2099 (1982).

breach of the contract when NSL failed to pay liquidated damages or Recurring Fees. (Compl. ¶¶ 31–33, 39–41) Super 8 also has properly alleged that the guarantee agreement, which made Pacrim and Dartmouth liable for liquidated damages and Recurring Fees, has been breached because Pacrim and Dartmouth have not paid Super 8 the damages and fees. (Compl. ¶¶ 47–49)

Therefore, I cannot discern any meritorious defense to Super 8's allegations.

### 2. Factors 2 and 3: Prejudice to Super 8 and Culpability of the Defendants

The second and third factors also weigh in favor of default. The defendants were properly served between April 1 and April 6, 2015 (Couch Aff. Exs. A–E), but have failed to appear and defend themselves in any manner. *See Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. CIV. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) ("Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant[s'] culpability in [the] default. *Id.* And "[t]here is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. CIV. 08–2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

The Court's conclusion based on this record is that the defendants breached their obligations under the franchise agreement and the guaranty; that they, not Super 8, were culpable for the breach; and that Super 8 was prejudiced as a result. Accordingly, I find that the entry of a default judgment is appropriate.

9

### D. Remedies

Super 8 seeks $551,938.77. (*See* Fenimore Aff. ¶ 27; Ex. F) That figure consists of (1) $240,277.73 in Recurring Fees, including principal and interest (*id.* ¶ 18), and (2) $305,431.89 in liquidated damages and pre-judgment interest (*id.* ¶¶ 24–25); attorney's fees of $5,769.00; and costs of $460.15 (*id.* ¶ 18).

Super 8 submitted documentary evidence in support of its demands (*see* Fenimore Aff. Exs. D–E; Couch Cert. Ex. B (ECF No. 11-2)), while the defendants have submitted nothing and have failed to appear or respond in any manner. An *ex parte* hearing would thus serve little additional purpose, so I rule based on the record before me.

I will grant Super 8's request for the principal amount of Recurring Fees due and interest on those fees. (*See* Fenimore Aff. ¶ 18) Super 8 documented Recurring Fees and the interest thereon owed through August 5, 2015, in the amount of $240,277.73. (Fenimore Aff. Ex. E )

I will also grant Super 8's request for liquidated damages (*see* Fenimore Aff. ¶¶ 24-25) Super 8 calculated $213,733.89 in liquidated damages based on the formula set in § 12.1 of the franchise agreement. (*Id.*) Super 8 then properly calculated 18% yearly interest over 870 days from May 4, 2013 (30 days from the date of termination) to September 21, 2015 (the return date of this motion to dismiss) to reach $91,698.00 in interest owed on the liquidated damages payment. (*Id.* ¶ 25) Thus, the total amount I will award for liquidated damages is $305,431.89.

I will also grant Super 8's request for attorney's fees and costs. (*See* Fenimore Aff. ¶ 26) Super 8 has adequately documented its attorney's fees, which do not seem unreasonable or disproportionate. (*See* Couch Cert. ¶¶ 8–9, Ex. B; Compl. Ex. A § 17.5 (non-prevailing party is to "pay all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement") Super 8 has also adequately documented its costs, which I also find to be

reasonable. (*See* Couch Cert. ¶ 10, Ex. B) I will enter a judgment that includes $5,769 in attorney's fees and $460.15 in costs.

The total judgment awarded is, therefore, $551,938.77. Post-judgment per diem interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

### III. CONCLUSION

For the foregoing reasons, the motion is granted as to defendants NSL and Dartmouth only. A default judgment will be entered against defendants NSL and Dartmouth and in favor of Super 8 in the total amount of $551,938.77, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order and judgment will issue.

Dated: March 22, 2016

Hon. Kevin McNulty
United States District Judge